UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Raymond Duffy, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CITIGROUP INC., THE CITIGROUP PENSION PLAN, and the PLANS ADMINISTRATION COMMITTEE of CITIGROUP INC.,<br><br>Defendants. | CIVIL ACTION NO.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT** |

Plaintiff Raymond Duffy ("Duffy"), a participant in The Citigroup Pension Plan (the "Plan")[1], on behalf of himself and a class of all others similarly situated, alleges as follows:

**INTRODUCTION**

1. This is a class action brought pursuant to §§ 204(b), 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1054(b), 1132, on behalf of the participants in and beneficiaries of the Plan, a defined benefit plan established and sponsored by the Citigroup Inc. ("Citigroup" or the "Company") as a benefit for its employees.

2. This action is brought on behalf of Plaintiff and all individuals who participated in the Plan at any time between January 1, 2000 and the present (the "Class Period"). Generally, Plaintiff alleges that the Plan, as amended effective January 1, 2000, instituted a "cash balance" formula ("Cash Balance Formula") for the calculation of benefits accrued under the Plan. The terms of the

---

[1] *See generally* The Citigroup Pension Plan January 1, 2002 Summary Plan Description ("2002 SPD") attached as Exhibit A for a description of the Plan and its relevant provisions.

amended Plan violated ERISA in at least the following ways: (1) the Plan violated ERISA's prohibition on reducing rates of benefit accrual due to the increasing age of a plan participant, ERISA § 204(b)(1)(H)(I), 29 U.S.C. § 1054(b)(1)(H)(I); and (2) the conversion of the Plan to a Cash Balance Formula as of January 1, 2000, and its further amendment effective January 1, 2002, caused reductions in the rate of future benefit accruals for members of the Class in violation of ERISA § 204(h), 29 U.S.C. § 1054(h).

## JURISDICTION AND VENUE

3.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

4.  Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some Defendants reside or maintain their primary place of business in this district.

## PARTIES

**Plaintiff**

5.  Plaintiff Duffy is a citizen of the United States who was employed full-time with Citigroup from August 1995 to March 2003.

6.  Plaintiff Duffy was a participant of the Plan during the Class Period and remains a "participant" in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

**Defendants**

**Citigroup**

7.  Defendant Citigroup is a Delaware corporation with its principal place of business in New York, New York. The Company is a diversified global financial services institution that,

through its subsidiaries and divisions, provides commercial and investment banking services, commercial loans to corporate entities, and advisory services regarding the structuring of financial transactions, including engaging in or helping to structure derivatives and hedging financial transactions, acting as underwriter in the sale of corporate securities to the public, and providing investment analysis and opinions on public companies, including its clients, via reports issued by securities analysts.

8. Citigroup is the Plan "sponsor" within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B) and the ultimate Plan administrator pursuant to ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).  *See* 2002 SPD, p. 38.  The Company is therefore a fiduciary of the Plan pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) in that it has discretionary authority and control regarding the administration and management of the Plan and/or the Plan's assets.

**The Citigroup Pension Plan**

9. Defendant The Citigroup Pension Plan (the "Plan") is an employee "pension benefit plan" pursuant to ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).  Specifically, the Plan is a "defined benefit plan" within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

10. "Effective December 31, 1998, the Retirement Plan of Citibank N.A. and Participating Companies was merged into The Travelers Group Pension Plan.  Coincident with the plan merger, the name of the Plan was changed to" its present designation, The Citigroup Pension Plan.  2002 SPD, p. 1.  The current Plan also includes participants from the former Citibuilder Retirement Plan.  The amended and restated Plan, the result of the merger of the Travelers, Citibuilder and Citibank defined benefit retirement plans, came into effect on January 1, 2000.

11. As of January 1, 2000, the benefit calculation formulas utilized by the three

predecessor plans was changed to the Cash Balance Formula.[2]

12.     As of January 1, 2002, the Plan was available to eligible employees of Citigroup, Inc. and certain participating subsidiaries, including Citibank, CitiFinanacial, National Benefit Life Insurance Company, Primerica Financial Services, Salomon Smith Barney, Inc., CitiStreet LLC, Travelers Property Casualty, Travelers Life and Annuity, the Travelers Insurance Company, Associates First Capital and their participating subsidiaries." *Id*.

13.     According to its 2002 SPD, the Plan is intended to "help [participants] build a source of income for retirement in addition to Social Security" by "pay[ing] a benefit after [a participant] retires." 2002 SPD, p. 1.  "The amount of the benefit is based on [a participant's] years of benefit service, [] pay, [] age, when benefits begin, and interest rates under the Plan." *Id*.

14.     Generally, "[w]hen [a participant] begin[s] participating in the Plan, the Company will set up a 'hypothetical' account in [the participant's] name to record the accumulation of benefits.  For each year [a participant] is eligible to participate, the Company will credit [a participant's] hypothetical account with a percentage of [that participant's] eligible compensation, as well as interest." *Id.*, at 2.  In general, a participant becomes "vested or entitled to a benefit in [that participant's] hypothetical account balance after five years of service." *Id*., at 1.  After

---

[2] Plaintiff notes that participants of the Plan who were participants of one of the predecessor plans were entitled to the full value of their accrued benefits as calculated under those plans up until December 31,.1999.  Indeed, the Plan provides for the "grandfathering" of certain provisions from the predecessor plans for certain longer tenured employees.  For example, certain "grandfathered" participants of the Citibank Plan continue to accrue benefits according to the method utilized under that plan.  Additionally, former participants of the Travelers Plan may choose whether their benefits are to be calculated under the old or Cash Balance Formula at retirement.  Therefore, Plaintiff notes that, upon information and belief, the Class does not include these certain "grandfathered" Plan participants who have not had their benefits calculated/affected by the application of the Cash Balance Formula or any other allegation of this Complaint.

retirement or leaving the Company with some benefits already vested, a participant can choose whether to receive that benefit "in a lump sum, or as a monthly annuity." *Id.*

15. The Company's Plan contributions are kept in a trust fund held by Citibank N.A. Citibank N.A.'s offices are at 111 Wall Street, New York, New York 10043.

**The Plans Administration Committee of Citigroup, Inc.**

16. Citigroup, through action of its Board of Directors, has delegated its authority as Plan administrator to the Plans Administration Committee of Citigroup, Inc. ("Plans Administration Committee"). *Id.*, at 38.

17. The Plans Administration Committee:

> [H]as the full discretionary authority and power to control and manage all the administrative aspects of the Plan, as well as full discretionary authority and power to determine eligibility for Plan benefits, to interpret and construe the terms and provisions of the Plan, to determine questions of facts and law, to direct disbursements, and to adopt rules for the administration of the Plan as it may deem appropriate in accordance with the terms of the Plan and all applicable laws.

*Id.*

18. The Plans Administration Committee is therefore the appointed Administrator of the Plan pursuant to ERISA and a fiduciary of the Plan pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) in that it has discretionary authority and control regarding the administration and management of the Plan and/or the Plan's assets.

19. Defendants include individual members of the Plans Administration Committee. Their identities are currently unknown to Plaintiff. Once their identities are ascertained, Plaintiff will seek leave to join them to the instant action.

<b><u>CLASS ACTION ALLEGATIONS</u></b>

20. Plaintiff brings this action as a class action pursuant to Rules 23(a), (b)(1) and/or

(b)(2) of the Federal Rules of Civil Procedure on behalf of himself and the following class of persons similarly situated (the "Class"):

> All individuals, excluding Defendants, who have participated in The Citigroup Pension Plan at any time after January 1, 2000 whose accrued or pension benefits are based, in whole or in part, on the Plan's Cash Balance Formula (the "Class Period").

21. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are, at a minimum, well over 100,000 members of the Class who participated in, or were beneficiaries of, the Plan during the Class Period.[3]

22. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

  i. whether the benefits earned by the Plan participants have been calculated correctly as required by ERISA;

  ii. whether the benefits provided under the terms of the Plan accrue at a rate which is reduced because of age;

  iii. whether the adoption of the January 1, 2000 and January 1, 2002 effective amendments of the Plan increased the potential that Defendant Citigroup will receive a reversion on termination of the Plan;

  iv. what remedies are needed to bring the Plan into compliance with the

---

[3] *See* the Plan's Form 5500 submission to the Internal Revenue Service and Department of labor, *available at* http://www.freeerisa.com, for Plan year 2003 which indicated that, as of December 31, 2003, the Plan had 257,277 participants with account balances.

    dictates of ERISA;

  v.  whether the Class is entitled to a clarification of future benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B);

  vi.  whether the Class is entitled to an injunction pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); and

  vii.  whether the members of the Class have sustained damages and, if so, what is the proper measure of damages

23. Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other members of the Class each sustained damages and/or were negatively affected by Defendants' wrongful conduct in violation of federal law as complained of herein.

24. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel highly competent and experienced in class action and complex litigation, including actions involving ERISA employee pension plans.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

25. Class action status in this ERISA action is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

26. Class action status is also warranted under the other subsections of Rule 23(b) because: (I) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants and/or (ii) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final

injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

## FACTUAL ALLEGATIONS

27. The newly-minted January 1, 2000 Plan created a new formula for calculating participant benefits for years beginning on or after January 1, 2000, which applies to Plaintiff and members of the Class. As noted above, under the new "Cash Balance Formula," and the revisions in the formula that resulted from the Plan's 2002 Amendment, each participant in the Plan annually accrues a retirement annuity benefit with a present value equal to the hypothetical compensation percentage credits ("compensation credits") for the year plus compound interest through the date that the participant would begin to receive benefits ("interest credits"). "The amount of [a participant's compensation credit] is based on [that participant's] age, years of service, and [] eligible compensation for each plan year. As [a participant's] age, service and compensation increase, so does the amount [of that participant's compensation credit]." 2002 SPD, p. 6-7 (*see* chart on p. 7 showing the compensation ("benefit") credit schedule).

28. The interest rate utilized by the Plan when calculating interest credits is "based on the average annual rate of interest on 30-year U.S. Treasury securities (as published by the IRS) in August of the previous year, rounded to the nearest tenth. For example, the interest credit rate for 2002 [was] 5.5%." *Id.*, p. 8. "Interest credits [are] posted to [a participant's] account at the end of the year, applying the interest rate to [a participant's] account balance at the beginning of the year. Interest credits will be made to [a participant's] hypothetical account until you take a distribution of your benefit." *Id.* (*see* chart on p. 8 for an illustration of the calculation of interest credits).

29. "For each year of qualifying [participant] service, a [cash balance] plan must provide for a definitely determinable, non-forfeitable, 'accrued benefit.'" *Cooper v. IBM Pers.*

*Pension Plan*, 274 F. Supp. 2d 1010, 1021 (N.D. Ill. 2003) (citing ERISA § 203(a), 29 U.S.C. § 1053(a). "The accrued benefit must be expressed in the form of an annual benefit commencing at normal retirement age." *Id*. (citing ERISA § 3(23), 29 U.S.C. § 1002(23).

30.     Under ERISA § 204(b)(H)(I), 29 U.S.C. § 1054(b)(H)(I), the terms of a defined benefit plan such as the Plan must not cause a participant's "rate of . . . benefit accrual" to be reduced "because of the attainment of any age."

31.     Under the Plan, the benefit earned in each year – expressed as an annuity benefit received at retirement – is equal to the pay credit earned each year plus compound interest at an interest rate specified in the Plan  (discussed above).

32.     Therefore, the Cash Balance Formula as expressed in the Plan, because, among other reasons, it dictates a constant interest rate for calculation and valuation of a participant's credits, provides a declining rate of accrual based on age.  Evaluated as comparative annuity values at expected retirement age, the Plan's annual credit of a worker age 50 with one year of service will accrue at a lower rate going forward than that a worker at age 25 with the same one year of service.  The older worker effectively has fewer years to earn interest than the younger worker, and therefore will receive a smaller annuity upon retirement as a result, at least in part, of his or her age.  This primary facet of the Plan violates the relevant provisions of ERISA.

33.     Additionally, prior to January 1, 2000, participants in the Plan's direct predecessor accrued annual benefits equal to 2% of their "average annual compensation," with an offset for a portion of the participant's Social Security benefit. The Plan defined average annual compensation as the average of a participant's five highest years of compensation during the participant's final 10 years of employment ("Final Average Pay Benefit")

34.     Effective as of January 1, 2000, the amended Plan froze the Final Average Pay

Benefit for certain participants, so that such participants receive a Final Pay Benefit calculated as if they left Citigroup on the last day of 1999.

35. At retirement, an employee who participated in the Plan before and after January 1, 2000, receives a retirement benefit equal to the sum of the frozen Final Average Pay Benefit plus the Cash Balance Formula benefit. An employee who began participation in the Plan on or after January 1, 2000, receives only the Cash Balance Formula benefit.

36. At times relevant to the instant action, ERISA § 204(h), 29 U.S.C. § 1054(h) provided, in pertinent part, that a defined benefit plan such as the Plan:

> [M]ay not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date [to each Plan participant] . . . .

37. The Plan Amendment that created the Cash Balance Formula, and a reduction in compensation credits effectuated as part of the 2002 amendment to the Plan, both constituted partial terminations of the Plan (and/or its direct predecessor(s)) that increase potential reversions to Citigroup, and that failed to treat the benefits accrued through the date of the partial terminations as non-forfeitable as required under ERISA and the terms of the Plan.

38. Lastly, Plaintiff Duffy has not filed a claim for benefits under the Plan's claims procedures because he seeks relief from violations of ERISA statutory provisions which do not require the exercise of discretion by a Plan fiduciary. In addition, Plaintiff Duffy has not attempted to exhaust his administrative remedies because to do so would be futile, as the issues involved in this action are only issues of law.

## COUNT I

39.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

40.     The Plan's Cash Balance Formula used to compute Plaintiff and the Class members' accrued benefits violates the accrual rules contained in ERISA § 204(b), 29 U.S.C. § 1054(b), in that: Effective as of January 1, 2000, and at all times thereafter, benefits provided under the terms of the Plan are reduced on account of increases in age or service, and therefore the Plan does not comply with the accrual rule of subparagraph (G)-(H) of ERISA § 204(b)(l), 29 U.S.C. § 1054(b)(l)(G)-(H).

41.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff and the Class are entitled to a judgment enjoining the Plan, Citigroup and the Plans Administration Committee from continuing to violate the foregoing provisions of ERISA and to determine and calculate their benefits in a manner which is consistent with such provisions.

42.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff and the Class are entitled to appropriate equitable relief to redress the Plan's violations of the foregoing provisions of ERISA and to enforce such provisions.

## COUNT II

43.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

44.     Pursuant to ERISA § 502{a)(1)(B), 29 U.S.C. § 1132(a)(l)(B), Plaintiff and the Class are entitled to a judgment clarifying their right to receive future benefits from the Plan, calculated under the terms of the Plan, to the extent those terms are not inconsistent with the applicable provisions of ERISA.

**COUNT III**

45.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

46.     Citigroup amended the Plan twice during the Class Period, effective January 1, 2000 and January 1, 2002, the effect of each being the reduction the rate of future benefit accruals provided by the Plan.

47.     The adoption these amendments to the Plan (and/or its direct predecessor(s)) caused partial terminations of the Plan and have therefore increased the potential that Citigroup will receive a reversion on termination of the Plan.

48.     Pursuant to the terms of the Plan, in the event of a partial termination of the Plan, the rights of all affected participants to benefits accrued as of the date of the partial termination shall be non-forfeitable, to the extent those benefits are funded as of such date.

49.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff and the Class are entitled to a mandatory injunction ordering Citigroup to comply with the terms of the Plan by declaring partial terminations of the Plan effective as of January 1, 2000 and January 1, 2002, and treating the accrued benefits of all affected participants as non-forfeitable.

WHEREFORE, Plaintiff prays for the following relief:

    A.     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 with the Class defined as aforesaid and Plaintiff as a proper Class representative;

    B.     Judgment for Plaintiff and the Class against defendants on all claims asserted herein including an amount of money sufficient to satisfy their claims

    C.     Injunctive and other equitable relief recounted above, including the enjoining of Defendants from enforcement of the Plan's unlawful provisions described above,

the amendment of the Plan to make all of its relevant provisions age-neutral, and the modification of the Plan so as to provide that participants are entitled to the greater of their benefit as calculated under the pre-Cash Balance Formula Plan iterations or the Cash Balance Formula (in its amended ERISA-compliant iteration);

D. Pre-and post-judgment interest;

E. Attorneys' fees and costs pursuant to the common fund/benefit doctrine or any other applicable law; and

F. Any other and further relief as the Court deems appropriate under the circumstances.

Dated: June 28, 2005

Respectfully submitted,

_____
Evan Smith, Esq. (ES-3254)
**Brodsky & Smith, LLC**
240 Mineola Blvd.
Mineola, NY 11501
Telephone: (516) 741-4977
Facsimile: (610) 667-9029

**SCHIFFRIN & BARROWAY, LLP**
Richard S. Schiffrin, Esq.
Joseph H. Meltzer, Esq.
Edward W. Ciolko, Esq.
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**Counsel for Plaintiff**